[Cite as *In re L.G.*, 2012-Ohio-1163.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF:  L.G. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney , P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| | : | Case No. 2011CA00260 |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2009JCV01491

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 12, 2012

APPEARANCES:

For Appellant:

AMANDA E. JAMES
Stark Co. Public Defender Office
200 West Tuscarawas St., Suite 200
Canton, OH 44702

For Appellee:

LISA A. LOUY
Stark County DJFS
110 Central Plaza S., Suite 400
Canton, OH 44702

*Delaney, J.*

{¶1}  S.G. (mother) appeals from the decision of the Stark County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, L.G., to the Stark County Department of Child and Family Services (appellee) for adoption.

### FACTS AND PROCEDURAL HISTORY

{¶2}  L.G. was born on September 4, 2009 to mother and an unknown father.[1] On November 25, 2009, appellee filed a complaint alleging dependency and neglect of L.G., and temporary custody was granted to appellee on February 17, 2010.  L.G. has thereafter remained in appellee's continuous custody.

{¶3}  On August 26, 2011, the agency filed a motion for permanent custody. On September 22, 2011, mother filed a motion for change of legal custody to a relative.  On September 29, 2011, the permanent custody hearing went forward as to mother's rights but was reset for paternity testing to be conducted on two alleged fathers.[2]

{¶4}  Mother has two additional children.  K.G., the eldest, is in the permanent custody of Grant County, Indiana. Mother lost custody of K.G. when she failed to complete case plan services.  T.G., the youngest, is also in appellee's temporary custody and resides with the same foster family as L.G.  Mother has a pending case plan in reference to T.G.

---

[1] Two potential fathers were excluded by D.N.A. testing and appellee was unable to locate at least one other potential father.
[2] The record indicates that on October 24, 2011, a hearing was held and testimony was taken which excluded all alleged fathers.

{¶5} While L.G. was in appellee's temporary custody, mother had a case plan which required a parenting evaluation at Northeast Ohio Behavioral Health, a drug and alcohol assessment at Quest Recovery Services, maintaining stable housing and obtaining employment.

{¶6} Mother attended the initial parenting evaluation on January 23, 2010, cancelled her appointment on April 15, 2010, failed to appear on June 8, 2010, attended on July 1, 2010, failed to appear on July 20, 2010, and attended on October 7, 2010.

{¶7} Mother's attendance on July 1 and October 10 was facilitated by her transportation by appellee. After repeated no-shows and cancellations, Northeast Ohio Behavioral Health reported that they would not schedule another appointment for mother unless she was accompanied by appellee's staff; therefore, her caseworker accompanied mother to her appointments, stayed with her, and took her home.

{¶8} The recommendations from the parenting evaluation were added to mother's case plan and included completion of Goodwill Parenting. Testimony showed that mother started Goodwill Parenting classes but was terminated for repeated absences.

{¶9} Mother was enrolled in counseling at Coleman Behavioral Health and was terminated for repeated absences.

{¶10} The case plan included urine screens, which were negative except for March 25, 2011. Mother failed to comply with screening requests in June, July, and August, 2011.

{¶11} Mother obtained subsidized housing in June 2010 but left the state from July through September 2010. Mother is employed "off and on" with a temporary services agency.

{¶12} Mother has visited with L.G. under supervision. These visits go well, although Mother occasionally needs to be redirected to care for her children.

{¶13} Mother's caseworker testified that compelling reasons exist to grant permanent custody of L.G. to appellee. He is two years old and has been in the same foster placement for most of his life. He has bonded with his foster family and responds to his foster parents as "mom" and "dad." Moreover, mother has done nothing to mitigate concerns regarding her parenting skills, and her caseworker does not believe mother is capable of parenting L.G.

{¶14} Mother admitted that she had a case plan in Indiana for K.G., her eldest child, and that she did not work the case plan there but came to Ohio instead. She started counseling at Community Services in compliance with the Indiana case plan, but did not complete those classes and eventually lost custody of K.G.

{¶15} Mother testified that she is aware of her case plan with L.G. She started Goodwill Parenting, but admitted that she was terminated for too many absences. She also admitted that she was not current in her attendance with Coleman or Community Services. She admitted that she went to North Carolina for two months, and then to Florida, and did not complete any counseling or parenting classes during that period. She also had no visits with L.G. during that time.

{¶16} L.G. is a healthy two-year-old with no developmental delays.  He has been in the same foster home since April 2010 and has bonded with his foster family, who would like to adopt him.

{¶17} Maternal aunt appeared at trial and stated that she would like to have custody of L.G.  This request was initially made within a week of trial.  Maternal aunt was aware that L.G. was in foster care for two years, but never sought placement, visits, or updates as to his welfare.  She stated that mother told her not to inquire about L.G. because she was trying to regain custody of L.G. herself.  Maternal aunt is dependent on S.S.I. and lives with her ex-husband, whose criminal history she claimed to be unaware of.  This criminal history includes a 2007 domestic violence charge.

{¶18} On October 26, 2011, the trial court granted permanent custody of L.G. to appellee.  Mother appeals from this decision.

{¶19} Mother raises two assignments of error:

{¶20} "I.   THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶21} "II.    THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I., II.

{¶22} Both of mother's assignments of error challenge the trial court's decision to terminate her parental rights and award permanent custody to appellee. Specifically, mother claims that appellee did not make reasonable efforts to reunify her with L.G., and that the trial court erred in finding that L.G. could not be placed with her or a family member in a reasonable period of time. We disagree.

{¶23} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶24} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶25} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent

custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶26} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶27} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶29} In this case, the trial court found by clear and convincing evidence that L.G. has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period pursuant to R.C. 2151.414(B)(1)(d). Mother does not challenge the trial court's finding. This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. No. 2008CA00118, 2008-Ohio-5458, ¶ 45.

{¶30} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶31} The trial court determined that L.G. could not be placed with mother within a reasonable time pursuant to R.C. 2151.414(E)(1) and (11), which require the following findings:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * * *.

(11)  The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to…an existing or former law of any other state…and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶32} A review of the record supports the trial court's decision that L.G. cannot be placed with mother within a reasonable time.  Mother has already lost custody of K.G., and T.G. is in appellee's temporary custody.  Mother is aware of her case plan, and appellee has worked to enable her to complete it, but mother has been terminated from counseling and parenting classes due to sporadic attendance.  Although appellee

apparently does not have concerns about substance abuse, it is noteworthy that mother failed to comply with three requested urine screens. Mother has obtained stable housing, and yet left the state for an extended period of time, during which she neither visited with L.G. nor worked on her case plan. Ultimately, we agree that L.G. cannot be placed with Mother within a reasonable period of time.

{¶33} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of L.G. to be placed in the permanent custody of appellee pursuant to R.C. 2151.414(D), and we agree.

{¶34} L.G. is a healthy 2-year-old with no significant developmental disabilities or behavioral problems. He is currently placed in foster care with his sibling and his foster family wants to adopt him. Two potential family caregivers have presented themselves; maternal grandmother was ruled out immediately due to her marriage to a convicted sex offender, and no home study was completed on maternal aunt because she presented herself for the first time a week before trial.

{¶35} Some bonding has occurred between mother and L.G., but the caseworker testified that L.G. is comfortable with mother to the same extent that he's comfortable with anyone. The caseworker further opined that any harm caused to

L.G. by separation of mother's parental rights is outweighed by the advantages to him of adoption.

{¶36} L.G. deserves permanency, and adoption would benefit him. Clear and convincing evidence supports the trial court's conclusion that it is in L.G.'s best interest to grant permanent custody to appellee.

{¶37} Mother argues that the agency did not make reasonable efforts to reunify mother with L.G. or reasonable efforts to assist mother with her case plan services. We note that mother's caseworker actively encouraged her to attend case plan services and provided her with transportation and bus passes, but mother was still terminated from those services for sporadic attendance. We find that the evidence established that mother failed in her case plan and did not comply with the recommendations for treatment, despite having been granted reasonable time to do so.

{¶38} Mother asserts that the trial court erred in finding that L.G. could not be placed with a family member in a reasonable period of time. We find, however, that the trial court could reasonably conclude that maternal aunt could not provide appropriate placement for L.G. because she expressed no interest in custody until a week before trial, never sought placement or visits, is financially dependent upon S.S.I., and lives with an ex-husband whose criminal history she purports to be unaware of.

{¶39} Upon a review of the record in light of the pertinent statutory factors, we find the record contains clear and convincing evidence which supports the trial court's determination. The trial court did not err when it determined L.G. could not be placed

with Mother in a reasonable time.  The granting of permanent custody of L.G. to appellee was made in consideration of the child's best interests and was not an abuse of discretion.

{¶40} Mother's first and second assignments of error are overruled.

{¶41} The decision of the Stark County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P. J.

Farmer, J. and

Wise, J. concur.


_____

HON. PATRICIA A. DELANEY


_____

HON. SHEILA G. FARMER


_____

HON. JOHN W. WISE

[Cite as *In re L.G.*, 2012-Ohio-1163.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:  L.G.       :
:
:
:
:
:
:    JUDGMENT ENTRY
:
:
:
:
:    Case No. 2011CA00260
:


For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.  Costs assessed to appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE